**TREE PUBLISHING CO., INC., Harlan Howard and Ron Peterson**

v.

**WARNER BROS. RECORDS, A DIVISION OF TIME–WARNER, INC., Randy Travis, Three Story Music, Alan Jackson and Seventh Son Music.**

**No. 3:91–0791.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 27, 1991.

Kemper Harlan Dodson, III, Dodson, Parker & Behm, Nashville, Tenn., Stuart Prager, Ables, Clark & Osterberg, New York City, for plaintiffs.

Scott Foster Siman, John David Wykoff, Benson & Simon, Robert L. Sullivan, Susan McDonald, Neal & Harwell, Nashville, Tenn., for defendants.

## MEMORANDUM

JOHN T. NIXON, Chief Judge.

Pending before the Court in the above styled action is the plaintiffs' motion for a preliminary injunction. Although the plaintiffs' papers filed in support of the motion requested an injunction against the defendants that would enjoin them from performing, manufacturing recordings, or releasing as a single the defendants' song "Better Class of Losers," the plaintiffs reduced their request at the hearing on November 22, 1991 to an injunction preventing the defendants from releasing the song as a single. For the reasons stated below, the Court hereby denies the plaintiffs' motion for a preliminary injunction.

## I. BACKGROUND

The plaintiffs, Tree Publishing Company, Inc. (Tree), Harlan Howard, and Ron Peterson, are the writers and owners of a copyrighted song entitled "Better Class of Losers." The defendants, Warner Brothers Records, Randy Travis, Three Story Music, Alan Jackson, and Seventh Son Music are the co-writers, producers and owners of their own song that is also entitled "Better Class of Losers." The plaintiffs initiated this action for copyright infringement and violations of unfair competition law against the defendants when the latter announced that they planned to release their song as a single.

The parties filed numerous affidavits and exhibits with their papers in support and in opposition to the motion. Additionally, the Court held a hearing on the matter on November 22, 1991. The Court finds the evidence described below to be relevant.

## II. ANALYSIS

The grant or denial of a preliminary injunction or temporary restraining order is within the sound judicial discretion of the trial court, *Virginian Railway Co. v. System Federation, R.E.O.*, 300 U.S. 515, 551, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937), reviewable only for contrariety to rules of equity or for abuse of discretion. *Nashville I–40 Steering Committee v. Ellington*, 387 F.2d 179 (6th Cir.1967). Many courts have noted that the issuance of a preliminary injunction is extraordinary relief. *See, e.g., Vision Center v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir.1979). The Sixth Circuit has articulated four factors which must be considered in exercising such discretion: (1) whether plaintiff has shown a substantial likelihood or probability of success on the merits; (2) whether plaintiff has shown irreparable injury; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing a preliminary injunction. *Mason County Medical Associates v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977); *Parker v. United States Department of Agriculture*, 879 F.2d 1362, 1367

(6th Cir.1989). These four factors, however, are elements to be balanced and not prerequisites that must be met. *In re Delorean Motor Co. v. Delorean*, 755 F.2d 1223, 1229 (6th Cir.1985).

### A. Likelihood of Success on the Merits

#### 1. *Copyright Infringement*

■ To prevail in a copyright infringement claim, the claimants must establish ownership of a valid copyright and copying by the defendants. *Robert R. Jones Associates, Inc. v. Nino Homes*, 858 F.2d 274, 276 (6th Cir.1988). In the absence of proof of actual copying, the claimants must show that the defendants had access to the claimants' work and that the defendants work is substantially similar to the claimants'. *Id.* at 277. As proof of ownership of a valid copyright to their song, the plaintiffs have provided a certificate of copyright registration, which the defendants do not challenge. Therefore, the Court examines the elements of inferred copying.

#### a. Access

■ For purposes of copyright infringement, access means hearing or a having a reasonable opportunity to hear the plaintiffs' work and thus having the opportunity to copy. *Intersong–USA v. CBS, Inc.*, 757 F.Supp. 274 (S.D.N.Y.1991). As Professor Nimmer points out, the trier of fact may ultimately decide that the defendant did not avail himself to the opportunity, but this goes to the ultimate issue of copying and not to the subordinate issue of access. 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.02[A]. Evidence that a third party with whom both the plaintiffs and defendants were dealing had possession of the plaintiffs' work is sufficient to establish access by the defendants. *Kamar International, Inc. v. Russ Berrie and Co.*, 657 F.2d 1059, 1062 (9th Cir.1981).

Affidavits filed by both sides conflict with regard to whether Randy Travis, Alan Jackson or any of the people around them had possession of the plaintiffs' song before the defendants wrote their song. At oral argument, however, it was revealed that defendant Warner Brothers produced

and distributed Charlie Pride's 1984 recording of the plaintiffs' song. Therefore, depending on the truth of this fact, and the credibility of the affiants on the stand, a strong possibility exists that a jury could find that the defendants had access to the plaintiffs' song.

### b. Substantial Similarity

■ The general test for substantial similarity is whether the similarity between the works would lead the average observer to recognize the alleged copy as having been appropriated from the copyrighted work. *Herbert Rosenthal Jewel Corp. v. Honora J. Co.*, 509 F.2d 64, 65 (2d Cir. 1974). In the instant case, the plaintiffs allege that the four words constituting the lyric expression "better class of losers," which also happens to be the song title, would lead the average observer to infer copying. No other substantial similarity, musical or lyrical, between the plaintiffs' song and the defendants' is alleged.

Professor Nimmer describes the situation at hand as a question of "fragmented literal similarity," that is, when a small part of the two works are identical. 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[A][2] (1991). What quantum of fragmented literal similarity constitutes substantial similarity is said to present "a classic jury question." *Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.*, 503 F.Supp. 1137, 1145 (S.D.N.Y.1980), *aff'd*, 672 F.2d 1095 (2d 1982). However quantitatively small, if the similarity is qualitatively important, the trier of fact may properly find substantial similarity. *Meredith Corp. v. Harper & Row, Publishers, Inc.*, 378 F.Supp. 686 (S.D.N.Y.1974), *aff'd*, 500 F.2d 1221 (2d Cir.1974). In a noted opinion, Judge Jerome Frank stated: "There may be wrongful copying, though small quantitatively; so if someone were to copy the words, 'Euclid alone has looked on Beauty bare,' or 'Twas brillig and the slithy toves' [, that might be held copying]." *Heim v. Universal Pictures Co.*, 154 F.2d 480, 487 n. 8 (2d Cir.1946).

The policy underlying the quantitative-qualitative analysis of fragmented literal similarity is that the copyright laws seek to protect the expressions of ideas and not the ideas themselves. *See* 17 U.S.C. § 102(b). This policy explains why, usually, the titles of copyrighted works are not protected. *Duff v. The Kansas City Star Co.*, 299 F.2d 320 (8th Cir.1962); Nimmer § 13.-03[A][2], at 13–41. Still, at least one court has stated that if a title is "arbitrary, fictitious, fanciful, artificial, or technical," it may achieve protection. *Johnston v. Twentieth Century–Fox Film Corp.*, 82 Cal.App.2d 796, 187 P.2d 474 (1947). Such reasoning may explain the suggestion in *Life Music, Inc. v. Wonderland Music Co.*, 241 F.Supp. 653 (S.D.N.Y.1965) that a single word from a song, such as "supercalifragilisticexpialidocious," which is also the song's title, might receive copyright protection. *Id.* at 656.

In the instant case, the lyric expression "better class of losers" is neither destined for literary immortality, as the passages quoted in Judge Frank's opinion, nor is it as capriciously fanciful as "supercalifragilisticexpialidocious." The phrase in both the plaintiffs' and the defendants' song is better described as a clever, homespun expression of the idea that being down and out is not necessarily an emotional status reserved for one social class or another. The expression's proximity to that raw idea makes its copyright protectability questionable. Whether a jury will afford this four word lyric expression copyright protection is an uncertain question. It is possible that the jury could find that the lyric phrase is not so "especially unique [n]or qualitatively important" that it warrants copyright protection. *See Stratchborneo v. Arc Music Corp.*, 357 F.Supp. 1393, 1404 (S.D.N.Y.1973). Certainly, this song is not the first to have a clever lyric expression, and none of the cases cited by either party have afforded copyright protection to such a small clever phrase. Because this question is crucial to the plaintiffs' copyright infringement action, and its outcome uncertain, the Court finds that, for purposes of granting injunctive relief, the plaintiffs fail to establish a substantial likelihood of success on this issue, and thus on its copyright infringement claim.

## 2. *Lanham Act Claim*

The plaintiffs alternatively base their motion for a preliminary injunction on their claim under the Lanham Act, which provides in pertinent part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or *any false designation of origin,* false or misleading description of fact, or false or misleading representation of fact, which—
>
> (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to damaged by such act.

15 U.S.C. § 1125(a). To prevail in an unfair competition action under this section of the Lanham Act, a plaintiff must prove that the defendants' use of the title will likely result in confusion of the plaintiffs' work with the defendants' work. *See Wynn Oil Co. v. American Way Service Corp.,* 943 F.2d 595, 604 (6th Cir.1991). In determining whether the confusion will likely result, the court must consider eight factors: (1) the strength of the plaintiffs' mark (title), (2) the relatedness of the goods, (3) the similarity of the marks (titles), (4) the evidence of actual confusion, (5) the marketing channels used, (6) the likely degree of purchaser care, (7) the defendants' intent in selecting the mark, and (8) the likelihood of expansion of the product lines. *Id.* at 599–600.

The Court finds that the plaintiffs' § 1125(a) claim is deficient because the title of the plaintiffs' song has not attained a "secondary meaning" as required for a common law claim of unfair competition, *see Whitney v. Ross Jungnickel, Inc.,* 179 F.Supp. 751 (E.D.N.Y.1960); *Northern Music Corp. v. Pacemaker Music Co.,* 248 F.Supp. 278 (S.D.N.Y.1964), and thus no public confusion is likely to result from the fact that the defendants' song title is the same. Under the *Wynn Oil* analysis, this is equivalent to finding that the plaintiffs' mark lacks the requisite strength. Although the plaintiffs' song has been publicly performed 47,000 times and reached number seventy three on the country music charts in 1984, these numbers are relatively insubstantial considering the lapse of time since the previous recording was released and the fact that the affidavit of one industry expert noted that the song "Stand by Your Man," a "hit" owned by Tree, has been publicly performed over two million times. The plaintiffs have failed to show that the title "Better Class of Losers" holds a secondary meaning in the eyes of the public, other than several people closely involved with the country music industry. Since the question of secondary meaning is still uncertain, the plaintiffs' have not shown a substantial likelihood of success on the merits of their unfair competition claim. Thus, the Court declines to grant the preliminary injunction under this theory.

### B. Irreparable Harm, Harm to Others and the Public Interest

█ In copyright infringement cases, the finding of a substantial likelihood of success on the merits raises a presumption of irreparable harm. *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1254 (3d Cir.1983). The absence of that presumption, however, does not preclude the plaintiffs from showing irreparable harm. *McGraw–Hill, Inc. v. Worth Publishers, Inc.,* 335 F.Supp. 415 (S.D.N.Y. 1971). Courts generally ignore the harm to others consideration because an infringer could set up his infringement with substantial investment and thereby claim harm by the injunctive relief. *Apple Computer,* 714 F.2d at 1255. And, of course, as the court in *Apple Computer* stated: "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright

protections." *Id.* Therefore, not surprisingly, the plaintiffs' burden for obtaining a preliminary injunction in most copyright cases collapses into the showing of a substantial likelihood of success on the merits, and that issue becomes determinative. *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.,* 886 F.2d 1173, 1174 (9th Cir.1989); *B.P. Johnson Co. v. Uniden Corporation of America,* 623 F.Supp. 1485, 1491 (D.Minn.1985).

The plaintiffs in the instant case claim that if the defendants are allowed to release their single, the plaintiffs will have no chance at getting their song released by entertainer Mark Chestnutt, and thus will be irreparably and incalculably harmed. Although the evidence shows that Mark Chestnutt has recorded the plaintiffs' song, it has not been shown that any definite plans exist to release his recording as a single. Given the dubious success of the plaintiffs song since it was first written in 1982, the Court finds that the irreparable harm that the plaintiffs assert is too remote to consider for purposes of this motion for injunctive relief. Thus, the plaintiffs failure to show a substantial likelihood of success on the merits factor is determinative.

III. CONCLUSION

For the above stated reasons, the Court hereby denies the plaintiffs motion for a preliminary injunction. An order consistent with the reasoning and conclusions in this memorandum was entered previously.