COMPTONE COMPANY, Ltd., Plaintiff,
v.
RAYEX CORPORATION, Defendant.
Civ. A. No. 17592.

United States District Court
E. D. New York.
June 21, 1957.

Harry C. Bierman, New York City and Jordon B. Bierman, New York City, for plaintiff, by Harry C. Bierman, New York City, of counsel.

Abraham J. Nydick, New York City, for defendant.

BYERS, District Judge.

This is a motion for an injunction pendente lite by which the plaintiff seeks in effect to continue the stay contained in an order to show cause granted on May 6, 1957.

The subject matter is a display card used in connection with the sale of sunglasses.

The application is also directed to a certain leaflet issued by the defendant which embodies in part certain of the characteristics of the display card.

The parties to the litigation are competitors in the business of selling sunglasses, and the affidavits now before the court indicate that the dispute had its origin in the closing months of 1956, when the plaintiff put upon the market sunglasses, as alleged by defendant, at a price below the actual cost to produce, in order to injure the latter's business.

Apparently representations made to the plaintiff in the effort to induce an abandonment of that activity, proved to be unavailing.

The answering affidavit frankly avows the situation, and the court appreciates the candor of the defendant in these matters, thus:

"20. Because of our anger at that answer of Comptone, the management of Rayex Corporation decided in anger that it was necessary to fight fire with fire.

"21. As a result, on January 2nd, we directed Morlaine Press to duplicate, as closely as possible, the display card used by Comptone in merchandising their imported sunglasses. The wording was slightly changed to include glasses on the card other than those made in France."

The affidavit continues to explain that the defendant's intention was to show this display card only so that the news would get back to the officers of Comptone; "and that when they questioned our usage of the same we thereafter would be enabled to reach an agreement whereby they would increase the price of their shaded sunglasses which we referred to as Triple Tone to a fair price above their cost.

"24. If they had agreed to this, it was our intention to withdraw the offering of the display card with the bubble or blister front in question, and destroy the 568 pieces; and to promote the French design sunglasses on a card constructed to hold the sunglasses on display exactly as the one we had been using in the preceding two (2) or three (3) years."

The plaintiff's display card is the subject of copyright registration in the United States Patent Office on application filed September 21, 1956, and appropriate indication thereof appears on the card.

In all material respects, the defendant's card reproduces that of the plaintiff, showing that the effort described in the foregoing quotation was successful. The few differences in wording are so insignificant as to require no comment.

The only real opposition to this aspect of the motion consists in the assertion that the plaintiff's card contains an untrue statement, and therefore that the plaintiff comes into court with unclean hands. Reference is made to the words on the plaintiff's card "fine optical lenses." The defendant's card in the same place employs this expression: "6 base optical lenses."

The defendant's contention is said to find support in the affidavit of defendant's president, Tunkel, in which he gives a definition of a fine optical lens as being produced from a special grade of glass called optical glass that has been screened and is free of all impurities.

The affidavit says, "a fine optical lens is one that is free from all defects such as, striae, bubbles, prism and astigmatic power as well as distortion or aberration." That he has examined fifty of the sunglasses put out by plaintiff, and that none contained a fine optical lens, and "they contained aberration, distortion and other defects that are not present in fine optical lenses."

As stated, the defendant's card uses the expression "6 base optical lenses."

The Tunkel affidavit is contradicted as to the meaning of the term "fine optical lenses" in the affidavit of one Jacques, who asserts familiarity with the sunglass business since 1940. His affidavit reads in part:

"There are various grades of optical lenses, none of which are 'free from *all* defects'. Our optical lenses (from which it appears that the affiant is connected with the plaintiff) are *substantially* free from defects, they meet the requirements of the trade and are not harmful to the normal vision. This term, which we had used for many years, is not a technical term and has no definite meaning in the trade, but is a form of advertising matter."

Obviously, this court cannot resolve such a conflict on these opposing affidavits, and is the less willing to attempt to do so by reason of the quoted wording employed by the defendant to describe its sunglasses.

The defendant's main reliance seems to be on the case of Stone & McCarrick v. Dugan Piano Co., 5 Cir., 220 F. 837, the facts in which are dissimilar to those here presented, to an heroic extent. That case is of no help in the present controversy.

Clearly the plaintiff is entitled to a temporary injunction to protect its copyrighted card, since the infringing device was confessedly adopted solely as an instrument of duress in a price war, as stated in the Tunkel affidavit.

The plaintiff also seeks to have the injunction applied to certain leaflets issued by the defendant subsequent to the granting of the stay embodied in the order to show cause. These leaflets contain an incomplete reproduction of the defendant's said display card.

It is true that the partial reproduction of the defendant's card reveals that the latter has been modified in unimportant respects; it still sufficiently so resembles the objectionable one that its reproduction in a leaflet cannot be condoned; therefore the temporary injunction will cover the leaflets referred to in the Nadel (plaintiff's president) affidavit, verified May 14, 1957, as Exhibit A.

The said affidavit is not controverted, and indicates the injurious effect which those leaflets are calculated to have upon this branch of the plaintiff's business.

It necessarily follows that the leaflets are deemed by this court to have offended against the stay contained in the order to show cause; the plaintiff seeks to have the defendant presently dealt with for that violation. This decision can be deemed to reflect the present opinion that the defendant is technically in contempt, but it seems to be expedient not to dispose of this element of the entire situation in piecemeal, but to reserve for determination on final hearing, the question of the exact penalty the defendant has thus incurred.

An order providing for an injunction pendente lite in accordance with the foregoing, is to be settled on notice.