**IRVING J. DORFMAN CO., Inc.,**
**Plaintiff,**

v.

**BORLAN INDUSTRIES, INC.,**
**Defendant.**

**C. A. No. 1833–69.**

United States District Court
S. D. New York.

Sept. 4, 1969.

---

Lackenbach & Lackenbach, New York City, for plaintiff.

Kaufman, Taylor, Kimmel & Miller, New York City, for defendant.

## OPINION

LASKER, District Judge.

This is a motion for a preliminary injunction to enjoin an alleged infringement of a copyright covering a lace design. Jurisdiction is vested in this court by 17 U.S.C. § 112 and 28 U.S.C. § 1338.

Plaintiff, Irving J. Dorfman, Inc. (hereinafter "Dorfman"), a New York corporation, is a dealer in laces, the laces being manufactured for it by others. Defendant, Borlan Industries, Inc. (hereinafter "Borlan"), also a New York corporation, is a manufacturer or converter of laces. The two firms are in direct competition with each other, as they originate lace designs, purchase lace designs from others, seek to copyright these designs whenever possible, and sell to the same group of purchasers.

Plaintiff alleges that its "Design #6726" (hereinafter "6726") was created for it by Glamour Lace & Fabrics, Inc. and its employee Gustave Gerstle [1] prior to November 1, 1964, the date of the first publication of "6726" by plaintiff. Glamour Lace & Fabrics, Inc. had obtained a copyright for its "Design #1966" on October 2, 1961, and Mr. Gerstle states that "6726" as produced for Dorfman was based upon "1966," but, in his opinion, "they are positively not identical." [2] Dorfman applied for copyright registration for "6726" on Febru-

---

1. Dorfman Affidavit, p. 2.

2. Gerstle Affidavit, p. 3.

ary 10, 1969, and Copyright No. Gp 61795 was granted on April 4, 1969, "within less than two weeks after it [plaintiff] secured a sample of defendant's infringing lace * * * "[3] Plaintiff filed its complaint in this action on April 30, 1969.

Borlan counters the allegation of copyright infringement with varied defenses. It first states that its "Design #1720" (hereinafter "1720"), which is exactly the same as plaintiff's "6726", has been manufactured and sold since 1962, thus preceding the publication date of plaintiff's "6726."[4] It further claims that Glamour Lace & Fabrics' "1966", registered on October 2, 1961, is identical to plaintiff's "6726," and therefore plaintiff should not have obtained a valid copyright for its "6726".[5] As a third defense, Borlan alleges that, even if the copyright was obtained for an original design, Dorfman did not protect the copyright by affixing to the copyrighted material the notice required by 17 U.S.C. § 10[6] and 17 U.S.C. § 19. Borlan's final defense is that the pictorial representation of Dorfman's "6726" on a brassiere package, without copyright notice, was a dedication of the design to the public.

\* \* \*

■ It is now settled that a textile design is a proper subject for copyright protection under 17 U.S.C. § 5(g) and § 5(k). Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954); Peter Pan Fabrics, Inc. v. Brenda Fabrics, Inc., 169 F.Supp. 142 (S.D.N.Y., 1959); Peter Pan Fabrics, Inc. v. Candy Frocks, Inc., 187 F.Supp. 334 (S.D.N.Y., 1960); 37 CFR § 202.10(b). Glamour

Lace & Fabrics, Inc. created "6726" for Dorfman, at Dorfman's request. Gerstle, an officer and employee of Glamour, states that "6726" was based on Glamour's "Design #1966"[7], which was registered in October 1961, but never published. The "work for hire doctrine," as enunciated by the Court of Appeals for the Second Circuit in Brattleboro Publishing Co. v. Winmill Publishing Corp., 369 F.2d 565, 567 (2d Cir., 1966), declares that when an employee produces work "at the instance and expense of his employer * * * the employer has been presumed to have the copyright."[8] The court observed, in terms applicable to the instant case:

"We see no sound reason why these same principles are not applicable when the parties bear the relationship of employer and independent contractor." Id. at 568.

The presumption of copyright ownership by the employer governs unless the contrary intention is shown. Nimmer on Copyright, 244 (1964). No contrary intent has been alluded to by Borlan in the instant action. Given this situation, Dorfman could properly have registered the design under 17 U.S.C. § 9 as an "author."[9] Thus, for the purposes of this motion, we will assume arguendo that plaintiff had a valid copyright when it made its first publication on or about November 1, 1964. The question which next arises, therefore, is whether Dorfman adequately protected this copyright.

■ Borlan claims that when Dorfman allowed a photograph of "6726" to be placed on boxes containing brassieres (manufactured by Exquisite Form In-

3. Plaintiff's Memorandum of Law, p. 6.

4. Grinberg Affidavit, p. 4.

5. Grinberg Affidavit, p. 2.

6. "Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, * * * *."

7. A comparison of the two designs does reveal minor differences, although the overwhelming impression is one of similarity.

8. The court was construing 17 U.S.C. § 26, which reads in relevant part: " * * * the word 'author' shall include an employer in the case of works made for hire."

9. Dorfman did in fact state that it was the author of "Lace Design 6726" in the registration form for the copyright granted on April 4, 1969.

dustries, Inc.) without insisting upon the affixation of copyright notice, the design was abandoned to the public. This proposition is not sound. The court in Key West Hand Print Fabrics, Inc. v. Serbin, Inc., 269 F.Supp. 605 (S.D. Fla., 1965—opinion of Chief Judge Dyer), held that a copyright mark was not required on a photograph of plaintiff's registered material. The court further held (at 610) that "plaintiff's 'cooperation' did not require it to insist that the statutory mark be displayed in the photographs used by Life." Thus, even where the copyright holder actively participates in placing photographs of the registered material in print, the fact that he does not insist upon copyright notice will not vitiate an otherwise valid copyright. See also Modern Aids, Inc. v. R. H. Macy & Co., Inc., 264 F.2d 93, 94 (2d Cir., 1959), where the court stressed the importance of there being "no evidence whatever that the plaintiff was at fault for the absence of the notice in these instances and the defendant had the burden of proof upon the issue of invalidation."

■ Borlan's chief contention in this proceeding is that copyright notice was not affixed pursuant to 17 U.S.C. § 10. When the statutory notice is not affixed to an article which is then passed into the stream of commerce, the copyright holder abandons his rights under the copyright and the article may be freely copied by others. United Merchants and Manufacturers, Inc. v. Sarne Company, Inc., 278 F.Supp. 162 (E.D.N.Y., 1967). The threshold question is whether the copyright notice was affixed when the goods left plaintiff's factory, and it is not fatal if others later removed the required notice. Peter Pan Fabrics, Inc. v. Acadia Company, 173 F.Supp. 292, 304 (S.D.N.Y., 1959), aff'd sub nom. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 (2d Cir., 1960); Gerlach-Barklow Co. v. Morris & Bendien, Inc., 23 F.2d 159 (2d Cir., 1927);

Key West Hand Print Fabrics, Inc. v. Serbin, Inc., supra. This is in accord with the view that notice requirements under 17 U.S.C. § 10 should be liberally construed. Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F.2d 851, 854 (2d Cir., 1967), cert. den. 389 U.S. 801, 88 S.Ct. 9, 19 L.Ed.2d 56. The burden of proof on the question of non-affixation of copyright notice rests upon the defendant. Stuff v. E. C. Publications, Inc., 342 F.2d 143 (2d Cir., 1965); Modern Aids, Inc. v. R. H. Macy & Co., Inc., supra. Borlan supports this burden by the submission of an affidavit of Bernard Rashkin, a director of manufacturing, purchasing and research for Exquisite Form Industries, Inc.[10] Mr. Rashkin states in his affidavit:

"To my knowledge and to the knowledge of those employed by Exquisite Form Industries, Inc. in production levels, the production deliveries of the bolts of lace received by us did not contain notice of copyright affixed to the fabric."

Defendant has also submitted the affidavit of Leonard Grinberg, Vice President of Borlan, which states that plaintiff did not affix the proper copyright notice, and

"I say that of my own knowledge because I have personally seen, in two separate factories, many bolts of plaintiff's lace marked as design #6276 but without any notice of copyright on the lace itself, the bolt or on the package or wrapper."

To counter the foregoing, plaintiff relies on the affidavit of its President, Irving J. Dorfman. In his affidavit Mr. Dorfman states that

" * * * it is a fixed policy and procedure of plaintiff to affix to the fabric or to the bolts or containers the appropriate copyright notice required by law."

He further states that Mr. Rashkin could not have seen the bolts of lace "6726" in the condition shipped by Dorfman, since

10. Exquisite Form is a manufacturer of ladies' undergarments, and a purchaser of lace from Dorfman in 1964 and 1965.

the shipments to Exquisite Form Industries were delivered to Manila in the Philippines.

It should be noted that Rashkin is not a party to this lawsuit, and presumably disinterested in the final adjudication. Dorfman, on the other hand, is a principal. He submits copies of bills demonstrating the shipment of lace to the Philippines [11], but the court is not informed as to what the total shipment from plaintiff to Exquisite Form was during the relevant period. Dorfman further states that Rashkin orally advised him that his former assertions by affidavit were mistaken, but he does not submit a supplemental affidavit by Rashkin setting forth the new information that allegedly came to Rashkin's attention in the interim. Nor does plaintiff submit any affidavits of other non-parties to the effect that proper copyright notice was affixed to plaintiff's lace or bolts.

█ Without expressing any views as to the ultimate merits of each party's position, the court notes that in the present state of the record there is a very real question as to whether the requisite copyright notice was affixed. This alone appears a sufficient reason for denying the severe remedy of an injunction pendente lite. Plaintiff does not contend that its case falls within the exemptions of Section 21 of the Copyright Laws,[12] and the allowances made by that section are not applicable here.

\* \* \*

█ The general prerequisites for the issuance of a preliminary injunction are a clear showing of probable success and possible irreparable injury to the plaintiff. Life Music, Inc. v. Wonderland Music Co., 241 F.Supp. 653 (S.D. N.Y., 1965); Societe Comptoir de L'Industrie etc. v. Alexander's Department Stores, 299 F.2d 33 (2d Cir., 1962). In copyright cases, probability of success is established with a prima facie showing of copyright infringement. American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc., 389 F.2d 903 (2d Cir., 1968); Cortley Fabrics Co. v. Slifka, 175 F.Supp. 66 (S.D. N.Y., 1959); H. M. Kolbe Co., Inc. v. Armgus Textile Co., Inc., 279 F.2d 555 (2d Cir., 1960). There is no doubt that, if the plaintiff had made a sufficient showing of a validly maintained copyright, infringement would also have been shown, since plaintiff's and defendant's designs are, at the least, exceedingly similar and "sufficiently intricate so that independent genesis of the two products would have been impossible." Peter Pan Fabrics, Inc. v. Brenda Fabrics, Inc., supra, 169 F.Supp. at 143. See also Miller Studio, Inc. v. Pacific Import Co., Inc., 39 F.R.D. 62 (S.D.N.Y., 1965). Here, however, the affidavits raised serious questions as to the continued validity of plaintiff's copyright. In light of the substantial questions raised by and remaining after analysis of the contradictory affidavits, the court must deny plaintiff's motion for preliminary injunction. Ross Products, Inc. v. New York Merchandise Co., 233 F.Supp. 260 (S.D.N.Y., 1964); Comptone Co. v. Rayex Corp., 158 F.Supp. 241 (S.D.N.Y., 1957); G. P. Putnam's Sons v. Lancer Books, Inc., 239 F.Supp. 782 (S.D.N.Y., 1965). As the court observed in Nadya, Inc. v. Majestic Metal Specialties, Inc., 127 F.Supp. 467, 468 (S.D.N.Y., 1954):

"The granting of a preliminary injunction 'is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.' \* \* \* 'It is a cardinal principle of equity jurisprudence that a preliminary injunction shall not issue in a doubtful case. Unless the court be convinced with reasonable certainty that the complainant must succeed at final hearing the writ should be denied.' \* \* \* " (Cited

---

11. Covering approximately 650 yards of lace.

12. 17 U.S.C. § 21 provides the terms under which accidental omission to affix prescribed notice may be forgiven.

with approval in Ross Products, Inc. v. New York Merchandise Co., supra.)

The element of timing further militates against the granting of a preliminary injunction here. Plaintiff admits that defendant's alleged copyright infringement has been continuing for "a considerable period of time.[13] Plaintiff offers no plausible explanation as to why it, a direct competitor located in the same city, only recently became aware of an infringement that had allegedly been continuing for "a considerable period of time." While it was undoubtedly courteous of plaintiff to agree to three adjournments of the argument of this very motion for a total of six weeks, nevertheless such acquiescence in postponement of the issue surely indicates that the matter is hardly so urgent as to justify an injunction before trial. In Thomas Wilson & Co. v. Irving J. Dorfman Co., Inc., 268 F.Supp. 711 (S.D.N.Y., 1967), this plaintiff alleged such behavior as a valid basis for denial of a preliminary injunction, and its argument was properly sustained.

Finally, plaintiff has not adequately shown the possibility of irreparable injury. In a similar case, the court in Klauber Bros., Inc. v. Lady Marlene Brassiere Corp., 285 F.Supp. 806 (S.D.N.Y., 1968), stated (at 808):

"Lace designs, unlike some of the cloth or textile fabric designs used only for one season, appear to have more stable marketability and are not so hurriedly swept away from the market by sudden changes of taste and style. Lace designs appear to have a longer commercial life. The plaintiff does not therefore appear before the Court as a litigant faced with the risk of forfeiting his rights through delay in the resolution of his lawsuit."

Plaintiff has alleged that defendant is able to sell a competitive product at a lower price, but fails to state "why money damages will not serve as an adequate remedy." American Fabrics Co. v. Lace Art, Inc., 291 F.Supp. 589, 592 (S.D.N.Y., 1968). In a situation where both parties sell or have sold to many of the same companies, the computation of damages should not be an overly burdensome task.

For the reasons stated heretofore, plaintiff's motion for a preliminary injunction is denied.

It is so ordered.

13. The motion was returnable on May 13, May 27, and June 10, 1969, and heard on June 24.